942 So.2d 272 (2006)
Richard BOOZE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00598-COA.
Court of Appeals of Mississippi.
November 14, 2006.
*273 Paul McGerald Luckett, McComb, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., CHANDLER and ROBERTS, JJ.
ROBERTS, J., for the Court.

SUMMARY OF THE CASE
¶ 1. After a three-day trial, a jury sitting before the Pike County Circuit Court found Richard Booze guilty of the murder of Roderick Dillon, aggravated assault of Lauria Patterson, and aggravated assault of Bobby Gordon. The circuit court sentenced Booze to life imprisonment for murder and fifteen years for each count of aggravated assault. Additionally, the circuit court set the sentences to run consecutively. Aggrieved, Booze appeals and raises two issues, listed verbatim:
I. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF MURDER.
II. WHETHER THE COURT HAD A DUTY TO PROVIDE THE JURORS WITH A LESSER-INCLUDED OFFENSE OF MANSLAUGHTER INSTRUCTION.
Finding no error, we affirm.

FACTS
¶ 2. The events that set Booze's appeal into motion took place on June 4, 2004. On June 4th, Booze visited family and friends at James Patterson's barber shop in Magnolia, Mississippi. During Booze's visit, he felt insulted by comments from Roderick Dillon. Evidence indicated that Dillon insulted Booze's family when he said, "f____ the n____ from New Orleans." Evidence also indicated that Dillon made inappropriate remarks about Booze's fifteen-year-old niece.
¶ 3. Booze retrieved a .40 caliber Smith and Wesson pistol from the trunk of his car. He then walked back to Patterson's barber shop and opened fire. Booze fired the pistol at Dillon until he emptied his pistol's ammunition magazine. Booze shot Dillon at least eight times. Dillon died as a result. In the process, Booze also shot two bystanders. Booze shot James Patterson's wife, Lauria Patterson, in the stomach and he shot Bobby Gordon in his right hand and the lower portion of his right leg. Both Lauria Patterson and Bobby Gordon survived.

PROCEDURAL HISTORY
¶ 4. On August 13, 2004, a grand jury sitting before the Pike County Circuit Court returned a three count indictment against Booze. The first count accused Booze of murdering Dillon in violation of section 97-3-19 of the Mississippi Code Annotated. Counts two and three were for aggravated assault incident to Booze's shooting Patterson and Gordon. Those two counts alleged violations of section 97-3-7(2)(b) of the Mississippi Code Annotated. Booze pled not guilty to all three *274 charges. Accordingly, the matter proceeded to trial.
¶ 5. Booze's trial commenced on February 15, 2005, and lasted until February 17, 2005. The State called sixteen witnesses over the course of the three-day trial. After the State concluded its case-in-chief, Booze rested without calling any witnesses. As mentioned, the jury found Booze guilty of all charges. Booze appeals.

ANALYSIS
I. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF MURDER.
¶ 6. Booze requested a directed verdict after the State completed its case-in-chief. The circuit court overruled Booze's request. On appeal, Booze claims the circuit court erred because the State presented insufficient evidence that he acted with malice.
¶ 7. A motion for directed verdict challenges the legal sufficiency of the evidence. Jefferson v. State, 818 So.2d 1099 (¶ 30) (Miss.2002). Appellate review is limited to whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed, and where the evidence fails to meet this test it is insufficient to support a conviction." Bush v. State, 895 So.2d 836 (¶ 16) (Miss.2005). After viewing the evidence in the light most favorable to the State, the evidence is sufficient if any rational trier of fact could have found the defendant committed each element of the crime beyond a reasonable doubt. Id.
¶ 8. "The killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person killed. . . ." Miss.Code Ann. § 97-3-19(1)(a) (Rev. 2006). Booze claims that the State presented insufficient evidence that he acted with malice. Though Booze attacks the sufficiency of the evidence of malice, section 97-3-19(1)(a) does not contain a reference to "malice." Essentially, it is of no matter, as malice aforethought and deliberate design mean the same thing. Tran v. State, 681 So.2d 514, 517 (Miss.1996). Said another way, the definition of "malice aforethought" is synonymous with the definition of "deliberate design." Id.
¶ 9. In any event, according to Booze the evidence showed that he acted in the heat of passion.
Heat of passion has been defined as a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror. The passion felt by the person committing the act should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.
McClendon v. State, 748 So.2d 814 (¶ 13) (Miss.Ct.App.1999) (citations and internal quotations omitted). Booze admits that he shot Dillon. However, Booze claims Dillon provoked him when he insulted his family members through his comment, "f____ the n____ from New Orleans." Booze points out Reese's testimony that the only people from New Orleans in Patterson's shop were Booze's family members. Booze also claims that Dillon provoked him when he *275 made improper, sexually crude remarks directed towards Reese's daughter, Booze's fifteen-year-old niece.
¶ 10. According to Booze, he "had reached the highest degree of exasperation." Booze also asserts that he "was obviously exasperated with Dillon. Not only had Dillon insulted him, Dillon also insulted his niece, . . . his brother-in-law, . . . and his cousin, James Patterson."
¶ 11. The State claims that there was sufficient evidence that Booze acted with deliberate design when he killed Dillon. The State points out testimony that "[a]fter Dillon disrespected Booze and others, Booze left the shop and went to his car for several minutes where he retrieved a .40 caliber Smith and Wesson pistol." The State also notes that Booze "returned to the shop and shot Dillon no fewer than eight times. Booze didn't stop firing until the slide kicked back on the pistol indicating it was out of bullets."
¶ 12. According to the State, "[a] reasonable and fairminded juror could have found there was ample time, prior to the first shot being fired, for the formation of a deliberate and premeditated design or specific intent to kill Booze's adversary." We agree. We can safely say that a reasonable person would very well likely consider Dillon's comments to be crude and insulting. However, it has long been the law in Mississippi that "[m]ere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter." Tyler v. State, 784 So.2d 972 (¶ 12) (Miss. Ct.App.2001). Coupled with evidence that Booze left the scene of the altercation, went to his car for several minutes, retrieved a pistol, returned to the scene of the altercation, and then shot Dillon at least eight times, there can be no doubt that the jury heard sufficient evidence to find deliberate design. Accordingly, we affirm.
II. WHETHER THE COURT HAD A DUTY TO PROVIDE THE JURORS WITH A LESSER-INCLUDED OFFENSE OF MANSLAUGHTER INSTRUCTION.
¶ 13. Booze acknowledges that he did not request a manslaughter instruction. Nevertheless, Booze claims that "[e]ven though defense counsel did not request a jury instruction on the elements of manslaughter, the trial court should have provided a manslaughter instruction because the defendant raised this issue in his motion for a directed verdict when he stated that the State had failed to prove malice aforethought."
¶ 14. It is entirely possible that Booze's counsel made a tactical decision to refrain from requesting a manslaughter instruction. That is, by declining to offer a manslaughter instruction, Booze's counsel could have been expecting the jury to find no evidence of deliberate design. In that event, the jury would have had no option save acquittal.
¶ 15. In any event, we will not find reversible error predicated on the failure of a circuit court to give an instruction that was not requested. Blocker v. State, 809 So.2d 640 (¶ 23) (Miss.2002). Put differently, a trial court does not have a duty to instruct the jury sua sponte, "nor is a court required to suggest instructions in addition to those which the parties tender." Wansley v. State, 734 So.2d 193 (¶ 20) (Miss.Ct.App.1999). This assignment of error is meritless.
¶ 16. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I MURDER AND SENTENCE OF LIFE IMPRISONMENT; COUNT II AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN *276 YEARS; AND COUNT III AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS, ALL COUNTS TO RUN CONSECUTIVELY TO ONE ANOTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.